POWERS MANUFACTURING CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7766.   Promulgated July 29, 1927.

1. Advances made to a company which was furnishing material to the petitioner, held, in this case, to represent loans and not a part of the cost of goods purchased.

2. Where the debtor corporation is yet in existence as an operating company with substantial assets and the creditor is continuing to make advances, held that the worthlessness of prior advances has not been established.

3. Loss denied for lack of proof as to when the transaction in question occurred.

*John T. Sullivan, Esq.*, for the petitioner.
*Thomas P. Dudley, Jr., Esq.*, for the respondent.

This proceeding involves a deficiency of $378.47 for the fiscal year ended July 31, 1920, and also a claim in abatement of $11,465.64 on account of additional taxes assessed, but not paid, for 1917, the period January 1, 1918, to July 31, 1918, and fiscal year ended July 31, 1919.

### FINDINGS OF FACT.

The petitioner is a corporation organized under the laws of Iowa, with its principal place of business at Waterloo, where it is engaged in the business of manufacturing canvas horse collars and other articles requiring the use of canvas.

In 1917, the petitioner was having difficulty in securing duck with which to carry on its manufacturing operations and similar difficulty was being experienced by Couch Brothers Manufacturing Co., a corporation in Atlanta, Ga., which was engaged in a similar line of business. The shortage of a supply of this material was due to the fact that the United States Government was taking over all available material of this type for war use. The Couch Brothers Manufacturing Co. proposed to the petitioner that it (the Couch Brothers Manufacturing Co.) would organize a company, erect a plant, and manufacture the needed material.. A corporation, Couch Mills Co., was organized and proceeded to erect buildings, purchase and install machinery and manufacture cotton duck. To carry out the building and installation operations, as well as supply money for general operations of the plant, cash advances were made to the Couch Mills Co. by the petitioner as follows: latter part of 1917, $10,000; during 1918, $10,000, and in 1919, $35,000. The first two amounts were evidenced by promissory notes, though no note or written obligation was furnished for the last-named amount.

The Couch Mills Co. agreed to furnish material to the petitioner, which was done, such material being billed to the petitioner at current market prices and payment being made for same weekly as shipments were made.

Couch Mills Co., after repeated requests from the petitioner for payment of these advances, issued stock to the petitioner to apply on account thereof, though the stock was of doubtful value. The Couch Mills Co. failed in 1921 and the petitioner realized nothing on account of the $55,000 cash advances which it had made. The liability of the Couch Mills Co. was carried on the books of the petitioner until the former company was finally liquidated in 1921.

In 1916 or 1917, the petitioner acquired stock in the Iowa-Alabama Farms Co. (hereinafter referred to as the Farms Company), a corporation owning land in Alabama and Iowa, where it was engaged chiefly in farming operations. These operations were not successful, it being necessary for the petitioner and R. M. Gunn, who were the

principal stockholders after 1916, to make advances on various occasions to carry on the business of the company. The advances which had been made by the petitioner to July 31, 1918, amounted to approximately $12,000.

In 1918, but prior to July 31, 1918, an option was given by the Farms Company for the sale of one-half of the Alabama land at $30 per acre, which land was mortgaged to the extent of $22.50 per acre. While the option was not exercised prior to July 31, 1918, the petitioner was informed prior to this time that it would be exercised and, accordingly, charged off its advances as a loss for the fiscal year ended July 31, 1918.

The sale was actually made in the following year. Later, the remainder of the land in Alabama was exchanged for land in Iowa. The Farms Company continued in existence for several years beyond the years involved in this proceeding and during all years the petitioner made advances to aid in its operations.

In addition to the charge-off of approximately $12,000 for the ficsal year ended July 31, 1918, $2,503.01 was charged off and claimed as a deduction for the fiscal year ended July 31, 1920, which represented similar advances made to, and interest paid for, the Farms Company.

During the World War, the petitioner purchased Liberty bonds of a par value of $10,000. In order to secure a part of the money to pay for them, it borrowed $8,000 from a bank, giving its note as evidence of the indebtedness and leaving the bonds with the bank as collateral. The note had not been paid on July 30, 1920, when the petitioner instructed the bank to sell the Liberty bonds and discharge the note. The bonds were sold by the bank, and credit was given on the note as paid on August 2, 1920, to which date interest was computed on the note by the bank. The canceled note was returned to the petitioner and entry made on its books on August 3, 1920. Petitioner claimed a loss of $1,450 in the fiscal year ended July 31, 1920, on account of this transaction.

OPINION.

LITTLETON: The first issue in this case is whether the Commissioner was in error in refusing to allow the petitioner to consider the amounts advanced to the Couch Mills Co. in 1917, 1918 and 1919, as a part of the cost of goods purchased from this company in these years.

While the facts are not entirely clear as to all understandings between the petitioner and Couch Mills Co., with respect to these advances, it is clear that the parties themselves treated it as a loan and so at all times acted with respect thereto. Apparently, the peti-

tioner made the loans on the assurance that when the Couch Mills Co. started operations, the petitioner would be supplied with material necessary for its operations, which it was difficult, if not impossible, to obtain at that time elsewhere. The fact, however, that this was what induced the petitioner to make the loan does not change its character. The first two amounts were evidenced by promissory notes and, as to the entire $55,000, the evidence is conclusive to the effect that the petitioner not only expected the repayment of the amount advanced but also, on various occasions, sought to obtain repayment. Whatever materials were furnished the petitioner were paid for at market prices and no attempt was made to credit the advances on the purchase price thereof. Certainly, if the Couch Mills Co. had been successful and could have repaid these advances as requested by the petitioner, it could not have been said that this represented income from a business transaction or have had any effect on the cost of goods sold—it would have been the mere liquidation of a liability. Whatever loss the petitioner suffered was sustained when the debt was proven worthless. The action of the Commissioner as to this issue must, therefore, be sustained.

The second issue involves the deductibility of certain advances to the Iowa-Alabama Farms Co. charged off as worthless in the period ended July 31, 1918, and fiscal year ended July 31, 1920.

The evidence shows that prior to July 31, 1918, advances had been made to the Farms Company, and that prior to this time an option had been given for the sale of a part of the land owned by the Farms Company, which the petitioner was informed, prior to July 31, 1918, would be exercised. The petitioner apparently decided that on the basis of the amount which would be realized from a sale of a part of the land, recovery could not be had on the advances previously made and charged them off as worthless. At this time the option had not been exercised and even outside of the part covered by the option, the Farms Company had 1,500 acres of land. Not only did the Farms Company continue in existence throughout 1919 when the option was exercised, but also the petitioner continued to make advances for carrying on its operations for at least several years beyond the years on appeal. The remainder of the land was later exchanged for other land which the evidence shows is being farmed at the present time—apparently by the Farms Company.

A requirement of the statute which the petitioner must meet in order to become entitled to the deduction here claimed is that the debt be " ascertained to be worthless " in the taxable year. The debtor corporation was in existence during the taxable year as an operating company with substantial assets, and the petitioner continued to make similar advances.

The Board is of the opinion that the evidence is insufficient to satisfy the burden imposed upon the petitioner of showing the worthlessness of these debts as a condition precedent to securing the benefit of the deduction claimed, and, therefore, the action of the Commissioner in denying the deduction must be sustained. *Winthrop Ames*, 1. B. T. A. 63; *Steele Cotton Mill Co.*, 1 B..T. A. 299; *Alemite Die Casting & Manufacturing Co.*, 1 B. T. A. 548.

The last issue is whether the petitioner is entitled to a loss in the fiscal year ended July 31, 1920, on account of a certain sale of Liberty bonds. The amount does not seem to be in question, the issue being whether the sale was made prior to July 31, 1920. The petitioner relies on the fact that on July 20, 1920, it instructed the bank to sell the bonds and argues that it is customary for banks to make almost immediate sale of such securities, instead of waiting almost two weeks.

No deductible loss was sustained until the bonds were sold, and in the absence of evidence showing that the bonds were sold within the fiscal year ending July 31, 1920, instead of on August 3, 1920, the Commissioner's determination is approved.

*Judgment will be entered for the respondent.*

Considered by LITTLETON, LOVE, and SMITH.