Veego Foods, Inc. v. Commissioner.
Veego Foods, Inc. v. Commissioner
Docket No. 62139.
United States Tax Court
T.C. Memo 1958-203; 1958 Tax Ct. Memo LEXIS 27; 17 T.C.M. (CCH) 1000; T.C.M. (RIA) 58203; November 28, 1958
*27 Petitioner was formed in 1949 when an existing corporation was too insolvent to furnish a potential supplier with a satisfactory financial statement. Petitioner commenced business in 1950, and bought merchandise from the supplier. During 1950, 1951 and 1952, it resold a substantial part of its purchases to the insolvent corporation on open account. The latter corporation was indebted to petitioner for large sums at the end of 1950 and 1951, and petitioner wrote off a portion of such indebtedness as of December 31, 1951. During the early months of 1952 petitioner extended a substantial amount of additional credit to the same debtor and continued to sell to it on open account. Held, respondent did not act in an arbitrary or unreasonable manner in disallowing a deduction for the taxable year 1951 on account of a partially worthless indebtedness. Harry Lesnik, C.P.A., 17 Academy St., Newark, N.J., for the petitioner. John J. Hopkins, Esq., for the respondent. FORRESTER
Memorandum Findings of Fact and Opinion FORRESTER, Judge: Respondent has determined deficiencies in the income tax of petitioner as follows: Year
Amount
1950
$ 148.86
1951
7,976.86
1952
2,599.56
*28 The sole issue is whether respondent erred in disallowing a partial bad debt deduction for the taxable year 1951 in the amount of $35,000. The taxable years 1950 and 1952 are in controversy solely because of the carryback and carryforward provisions of the Internal Revenue Code of 1939 respecting net operating losses. Our determination with respect to 1951 will also be decisive of the deficiencies determined for 1950 and 1952. Findings of Fact Some of the facts are stipulated and are so found. Petitioner was incorporated under the laws of the State of New Jersey in April of 1949. It commenced business in 1950 as an importer and dealer in cheese, with principal place of business in Plainfield, New Jersey. Petitioner's corporate income tax returns for the calendar years 1950 and 1951 were filed with the collector of internal revenue at Newark, New Jersey. Its corporate income tax return for the calendar year 1952 was filed with the director of internal revenue at Newark. From April 6, 1949, to December 31, 1951, the capital stock of petitioner, according to its records, was owned as follows: Stockholder
No. of Shares
Hy Zausner
5
Sol Zausner
4
Martin A. Fromer
1
*29 Hy and Sol Zausner are brothers. Martin A. Fromer was their and petitioner's attorney. The foregoing shareholders also constituted petitioner's board of directors. From April 14, 1949, to May 11, 1950, Hy Zausner was president, and Sol Zausner was secretary-treasurer. Thereafter, and until at least December 31, 1951, Sol Zausner was president and Hy Zausner secretary-treasurer of petitioner. The single share in the name of Martin A. Fromer was held by him for Sol Zausner. During 1952, Hy and Sol Zausner each continued to own 50 per cent of the capital stock of petitioner. Zausner Foods, Inc., (hereinafter called "Zausner") was incorporated under the laws of the State of New York on December 17, 1945. It engaged in the business of manufacturing cheese, and also imported, bought and sold cheese. From January 2, 1946, to December 31, 1951, the stockholders of record of Zausner and offices held were as follows: Stockholder
No. of Shares
Office
1/ 2/46 to 12/31/46
Hy Zausner
25 common
President
250 preferred
Sol Zausner
25 common
Sec'y.-Treas.
250 preferred
12/31/46 to 12/22/50
Hy Zausner
275 common
Sol Zausner
275 common
12/22/50 to 1/15/51
Hy Zausner
275 common
Harry A. Scharf
275 common
1/15/51 to 12/31/51
Hy Zausner
275 common
President
Martin Zausner
275 common
Sec'y.-Treas.
*30 Martin Zausner is the son of Hy Zausner, who purchased the foregoing 275 shares for Martin. No further change occurred in stock ownership during 1952. Petitioner was created principally for the purpose of purchasing cheese from a new contact of Hy and Sol Zausner. Zausner was insolvent. Hy and Sol knew that the shipper of the cheese would require a financial statement, and that Zausner's statement would not be satisfactory. After petitioner began operations, it at first resold most of its purchases to Zausner. No special concessions were made by one corporation to the other by way of price or terms. Petitioner and Zausner used the same office until 1955. Zausner's balance sheet as of December 31 of 1949, 1950, and 1951, was as follows: ZAUSNER FOODS, INC.
BALANCE SHEETS
December 31,
1949
1950
1951
ASSETS
Cash
$ 1,254.93
$ 1,059.80
$ 365.00
* Accounts Receivable-Net
250,422.67
106,764.60
2,695.79
Inventories
106,566.07
65,114.24
5,363.77
** Fixed Assets-Net
78,131.27
65,943.67
55,399.26
Other Assets
1,500.00
1,212.00
Investment
35,000.00
TOTAL ASSETS
$437,874.94
$240,094.31
$ 98,823.82
LIABILITIES AND CAPITAL
Accounts Payable
$457,572.51
$205,951.67
$301,753.07
Notes and Loans Payable
210,481.61
285,020.09
177,115.00
Accrued Expenses
22,360.69
8,599.08
8,418.32
Cash Overdraft
87,092.24
59,243.21
TOTAL LIABILITIES
$777,507.05
$558,814.05
$487,286.39
Capital Stock
55,000.00
55,000.00
55,000.00
Deficit
(394,632.11)
(373,719.74)
(443,462.57)
TOTAL LIABILITIES AND CAPITAL
$437,874.94
$240,094.31
$ 98,823.82
*31 Zausner's consolidated balance sheet with a wholly-owned subsidiary as of December 31, 1951, was as follows: December
Assets:
31,1951
Cash
$ 1,417.32
Accounts Receivable
96,344.27
Less: Reserve for Bad Debts
(5,391.88)
Inventory
34,012.48
Fixed Assets
119,168.91
Less: Reserve for Depreciation
(63,769.65)
Other Assets
Total Assets
$181,781.45
Liabilities and Capital: Accounts Payable
$306,278.79
Notes and Loans Payable
241,338.85
Accrued Expenses
10,449.40
Cash Overdraft
Total Liabilities
$558,067.04
Capital Stock
55,000.00
Deficit
(431,285.59)
Total Liabilities and Capital
$181,781.45
During 1950, 1951, and 1952, petitioner's total sales, sales to Zausner, and the percentage of the former represented by the latter, were as follows: Sales to
Per-
Year
Total Sales
Zausner
centage
1950
$158,726.37
$142,654.76
89.9
1951
556,565.25
333,887.82
60.0
1952
345,698.78
119,819.27
34.7
*32 Zausner owed petitioner the following amounts at the close of each of the years 1950, 1951, and 1952 prior to any adjustment by reason of any write-off by petitioner of a part of the indebtedness: Date
Amount
12/31/50
$ 37,063.16
12/31/51
109,991.96
12/31/52
60,075.08 All of the foregoing amounts were carried as open account indebtedness. The foregoing sales by petitioner to Zausner in 1952 in the amount of $119,819.27 were on open account. Between January 1, 1952, and March 26, 1952, petitioner extended to Zausner additional net credit in the amount of $20,166.26. Zausner's profit and loss statement for 1950 shows a net profit in the amount of $22,227.37. Its profit and loss statements for 1951 show a net loss from its own operations in the amount of $69,215.53 and a consolidated net loss in the amount of $57,038.55. Petitioner wrote off as a partially worthless debt as of December 31, 1951, $35,000 or approximately one-third of the amount then due from Zausner. On the same day, petitioner sold merchandise to Zausner on open account in the amount of $33,595.81, and received payments on the account in the total amount of $9,034.75. Zausner went out of *33 business at some undisclosed time, and no part of the indebtedness written off as aforesaid has ever been collected or recovered by petitioner. Opinion The controlling provision is section 23(k) of the Internal Revenue Code of 1939, which reads in part as follows: "SEC. 23. DEDUCTIONS FROM GROSS INCOME. "In computing net income there shall be allowed as deductions: * * *
"(k) Bad Debts. - "(1) General Rule. - Debts which become worthless within the taxable year; * * * and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction. * * *" The allowance of the deduction for a fully worthless debt is unqualified, whereas that in respect of a partially bad debt is couched in equivocal and permissive terms. The Commissioner is required to be "sat sfied" that only a portion of the indebtedness is collectible, and even then the statute states only that he "may" (not "must") allow the deduction. This difference in terminology is not without significance. A substantial degree of discretion rests with respondent, and his determination not to allow *34 a deduction for partial worthlessness of an indebtedness must be sustained unless clearly arbitrary and unreasonable. Wilson Bros. & Co. v. Commissioner, 124 Fed. (2d) 606 (C.A. 9), affirming a Memorandum Opinion of the Board of Tax Appeals; Olympia Harbor Lumber Co. v. Commissioner, 79 Fed. (2d) 394 (C.A. 9), affirming 30 B.T.A. 114; Stranahan v. Commissioner, 42 Fed. (2d) 729 (C.A. 6), affirming 14 B.T.A. 1405, certiorari denied 283 U.S. 822; Giles E. Bullock, 26 T.C. 276, affd. 253 Fed. (2d) 715 (C.A. 2); H. W. Findley, 25 T.C. 311, affd. 236 Fed. (2d) 959 (C.A. 3). In Giles E. Bullock, supra, we said at page 299: "A deduction for the partial worthlessness of a debt due from another is allowable only to the extent that the taxpayer is able to demonstrate to the satisfaction of the Commissioner that, upon consideration of all of the surrounding circumstances, a part of the debt is not recoverable. Sec. 23(k)(1); Regs. 111, sec. 29.23(k)-1(b). The courts have recognized that the Commissioner has a certain amount of discretion in making *35 his determinations with respect to such deductions and that they should not be disturbed unless they are plainly arbitrary and unreasonable. * * *" And in Wilson Bros. & Co. v. Commissioner, supra, the Court of Appeals said, at page 609: "The question whether a taxpayer may take a partial bad debt deduction is thus committed to the sound discretion of the Commissioner, and his judgment is controlling unless it is plainly arbitrary or unreasonable. Olympia Harbor Lumber Co. v. Commissioner, 9 Cir., 79 Fed. (2d) 394; United States v. Beckman, 3 Cir., 104 Fed. (2d) 260, certiorari denied sub. nom., Doty v. United States, 308 U.S. 593, 60 S. Ct. 123, 84 L. Ed. 496; Stranahan v. Commissioner, 6 Cir., 42 Fed. (2d) 729, certiorari denied 283 U.S. 822, 51 S. Ct. 346, 75 L. Ed. 1437." Thus, it is insufficient that we might have reached the opposite conclusion were we in respondent's position. The statutory discretion is his, not ours, and our review of his action is limited to a search for abuse in his exercise thereof. Partial worthlessness of an indebtedness must be evidenced by some discernible event or *36 change in the debtor's economic position. Cf. H. W. Findley, supra, where we said at page 319: "It seems obvious that partial worthlessness of an obligation must be evidenced by some event or some change in the financial condition of the debtor, subsequent to the time when the obligation was created, which adversely affects the debtor's ability to make repayment." [Italics supplied.] Lehman v. Commissioner, 129 Fed. (2d) 288 (C.A. 2). And cf. Grant G. Simmons, 4 T.C. 478. No such "event" or "change" can be found here. Zausner was deeply insolvent at the beginning of 1950 as well as at the end of 1951, and its position in that respect did not worsen markedly during either this entire period or the year 1951 alone. We cannot say that it was an abuse of discretion for respondent to deny the deduction sought. The soundness of respondent's determination is strengthened by the fact that during 1952 petitioner continued to sell to Zausner substantial quantities of merchandise on open account, and during the early part of 1952 extended additional net credit in the amount of $20,166.26. In fact, on the very day of the charge-off in controversy, *37 December 31, 1951, additional credit was extended to Zausner in the net amount of over $24,500. Contemporary and continued extension of credit is normally inconsistent with the claim of worthlessness. Cf. John W. Sherwood, 8 B.T.A. 103, where the Tax Court (then the Board of Tax Appeals), in denying a claimed bad debt deduction, said at page 106: "* * * it is worthy of note that during the remainder of the year, after the financial condition of Cottman had been ascertained, and until * * * 1921, the petitioner continued to furnish supplies to the allegedly worthless debtor. It is difficult to square such action with a claim that the account was ascertained to be worthless." See also Powers Manufacturing Co., 7 B.T.A. 786, affd. 34 Fed. (2d) 255 (C.A. 8). Moreover, as already noted, Zausner was deeply insolvent at all relevant times, not merely during or at the end of 1951. It had a deficit in the amount of $394,632.11 as of December 31, 1949. This was reduced by approximately $20,000 by the end of 1950, and then increased to $431,285.59 by December 31, 1951. In accordance with the foregoing, respondent's determination must be sustained. *38 Decision will be entered for the respondent. Footnotes
*. These amounts were computed after taking into consideration reserves for bad debts for 1949, 1950, and 1951 in the respective amounts of $7,917.42, $7,612.97, and $5,391.88. ↩
**. These amounts were computed after taking into consideration depreciation reserves for 1949, 1950, and 1951 in the respective amounts of $52,476.61, $63,761.72, and $63,769.65.↩